# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WEIS MARKETS, INC., | No. 4:22-CV-00118 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| THE SF GROUP LTD LIABILITY CO., a/k/a THE SF GROUP, LLC, TATANKA TRADING LLC, RICHARD LEES, and CONNOR LEES, | |
| Defendants. | |

## MEMORANDUM OPINION

### NOVEMBER 23, 2022

Plaintiff Weis Markets, Inc. ("Weis") sues two corporate entities and the principals of those entities for a variety of claims arising from Weis' purchase of disinfectant spray from Defendant SF Group, LLC ("SF"). SF imported the spray from Defendant Tatanka Trading, LLC ("Tatanka") and through its member, Connor Lees, solicited an offer from Weis to purchase the spray. SF's other member is Richard Lees. Weis purchased the spray only to try to cancel some of its orders later when consumer demand fell. SF in turn threatened litigation. Weis eventually settled with SF, accepting all of the spray it ordered. But several months later, state authorities in Pennsylvania ordered Weis to stop selling the spray because it was unregistered.

Weis now alleges the Defendants misrepresented both their efforts to register the spray under applicable federal and state laws and that the spray was in fact registered when Defendants shipped it to Weis. Weis explains that it relied on Defendants' misrepresentations in purchasing the spray and in settling its dispute with SF. Weis also alleges that Tatanka and SF are a common enterprise and that the Lees are personally liable for SF's misrepresentations. Defendants filed two Motions to Dismiss Weis' claims, one from the corporate entities, Tatanka and SF, the other from the Lees. For the following reasons, Defendants' motions will be denied.

## I.   BACKGROUND

### A.   Initial Negotiations and Purchase of the Spray

In August 2020, Connor Lees emailed Weis inquiring whether Weis would be interested in purchasing SF's new "Aerosol Disinfectant Spray."[1] In a subsequent email, he communicated the pricing for the spray and attached document describing the spray.[2] The attachments indicated that approval from the United States Environmental Protection Agency ("EPA") was "pending."[3] The spray was required to be registered with the EPA under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, and the Pennsylvania Pesticide Control Act ("PPCA"), 3 P.S. § 111.21 *et seq.*[4] Weis expressed an interest in

---

[1]   First Amended Complaint ("FAC"), Doc. 18 ¶¶ 13-14;  Email from Connor Lees, Doc. 18-1 at 2.

[2]   FAC, Doc. 18 ¶ 15; Aug. 10 Email from Connor Lees, Doc. 18-1 at 4-5.

[3]   *Id.*

[4]   *See* FAC, Doc. 18 ¶ 40.

purchasing the spray for resale in its grocery stores and responded to Connor Lees' emails, including a document explaining Weis' recall policy.[5] That policy establishes certain fees if Weis is required to recall a vendor's product.[6]

On September 1, 2020, Connor Lees sent another email to Weis.[7] In that email, Connor Lees explained that SF "[had] another meeting with the EPA next week for [its] label presentation" in which SF would "have to submit a full packet with all the different derivatives of the label that we [might] possibly sell."[8] Connor Lees further indicated that following that meeting, the product would "go[] into EPA review and processing."[9] The email explained that SF's attorney believed the product "c[ould] be registered with the EPA as soon as November but as late as January depending on how quickly [the EPA] process[es] it."[10] SF would have "had approximately 32,000 units available at the factory" the following week, but [those units] would not be registered.[11] But once SF had "EPA registration [it] [would] have 100,000 units available on a weekly basis."[12]

Based on the representations in Connor Lees' September 1, 2020, email, Weis placed nine purchase orders for the spray throughout October and November 2020.[13]

---

[5]    FAC, Doc. 18 ¶ 17; Food Safety Memo, Doc. 18-1 at 19.
[6]    FAC, Doc. 18 ¶ 17; Food Safety Memo, Doc. 18-1 at 19.
[7]    FAC, Doc. 18 ¶ 21-23; Sept. 1 Email from Connor Lees, Doc. 18-1 at 21.
[8]    Sept. 1 Email from Connor Lees, Doc. 18-1 at 21.
[9]    *Id.*
[10]   *Id.*
[11]   *Id.*
[12]   *Id.*
[13]   FAC, Doc. 18 ¶ 24; Purchase Orders, Doc. 18-1 at 24-38.

The orders indicated that shipping should begin January 1, 2021, although Weis wanted the products earlier.[14] Each order included language indicating that SF, as the vendor, warranted to Weis that the products it provided "compl[ied] with all applicable legal and governmental standards."[15] Eventually, SF delivered on four of the nine purchase orders.[16]

### B.    The Settlement Agreement

Facing declining consumer demand for the spray, Weis requested that SF extend the delivery period in January 2021.[17] Weis then sought to cancel the five unfulfilled purchase orders.[18] In response, SF threatened litigation if Weis did not accept and pay for the spray.[19]

Weis offered to pay SF the difference between the agreed-upon purchase price and the price that SF could obtain by reselling the extra spray.[20] SF refused, demanding a lump-sum payment for the remaining spray and that Weis take immediate possession of the spray.[21] All the while, Weis claims its understanding was that the spray was registered with the EPA.[22]

---

[14]   FAC, Doc. 18 ¶ 24.
[15]   FAC, Doc. 18 ¶ 25; Purchase Orders, Doc. 18-1 at 26-38.
[16]   FAC, Doc. 18 ¶ 26.
[17]   *Id.* ¶ 28.
[18]   *Id.* ¶ 29.
[19]   *Id.*
[20]   *Id.* ¶ 31.
[21]   *Id.* ¶ 32.
[22]   *See id.* ¶¶ 30, 32, 33.

Weis settled its dispute over the remaining spray with SF in June 2021.[23] The parties executed a Settlement Agreement in which Weis agreed to take title to the remaining spray, pay for a portion of the storage costs, and pay SF a lump sum.[24] Weis additionally agreed to broadly release SF from all claims that accrued before the Agreement, which was executed on June 4, 2021.[25]

Two months after the parties executed the Agreement, Connor Lees dissolved the SF Group under New Jersey law.[26] All of SF's assets were used to compensate its members, Defendants Richard and Connor Lees, and its creditors, one of which was Tatanka.[27]

### C.   The Stoppage Order

On December 15, 2021, the Pennsylvania Department of Agriculture issued a Pesticide Stop Sale, Use, and Removal Order ("Stop Sale Order") to Weis regarding the spray because it was not properly registered under FIFRA and the PPCA.[28] When it received the order, Weis was unaware that the spray was not registered, and had $649,415.28 worth of spray in stock that it could not sell.[29] Nor can it register the spray now, as it lacks the necessary data or status with the EPA.[30]

---

[23]   *Id.* ¶ 33.
[24]   *Id.* ¶¶ 33-35; Settlement Agreement, Doc. 18-1 at 40-41.
[25]   Settlement Agreement, Doc. 18-1 at 42, 45.
[26]   FAC, Doc. 18 ¶¶ 36-37; Certificate of Dissolution and Termination, Doc. 18-1 at 49.
[27]   FAC, Doc. 18 ¶¶ 37-39.
[28]   *Id.* ¶¶ 40-43; Pesticide Stop Sale, Use, and Removal Order, Doc. 18-1 at 51-53.
[29]   FAC, Doc. 18 ¶¶ 44-45.
[30]   *Id.* ¶ 47.

### D.    Procedural History

Weis now brings several claims against Defendants with respect to the transactions listed above. Specifically, Weis brings claims for fraud because Defendants misrepresented the spray's registration status when they shipped it (Count I), fraudulent inducement with respect to the purchase orders (Count II), fraudulent inducement with respect to the Settlement Agreement (Count III), fraud under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 *et seq.* (Count IV), and negligent misrepresentation (Count V).

If the Court finds the Settlement Agreement valid, Weis alternatively alleges that Defendants breached the purchase orders based on the nonconforming status of the unregistered spray (Count VI) and for failure of consideration (Count VII). Weis lastly alleges Defendants breached the implied warranty of merchantability (Count VIII) and that Defendants were unjustly enriched (Count IX).[31] Defendants SF and Tatanka jointly move to dismiss Weis' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[32] The Lees jointly move to do the same.[33] Those two motions have been fully briefed and are ripe for disposition.

## II.    LAW

Under Rule 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the

---

[31] *Id.*
[32] SF and Tatanka's Mot. to Dismiss, Doc. 21.
[33] Lees' Mot. to Dismiss, Doc. 27.

landmark decisions of *Bell Atlantic Corp. v. Twombly*[34] and *Ashcroft v. Iqbal*,[35] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[36]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[37]

## III.   ANALYSIS

### A.   Choice of Law

At the outset, the Court must determine the applicable law for each of Weis' claims. Both parties cite both New Jersey and Pennsylvania law but do not clearly argue which one controls save those claims where the applicable law is clear, such as Count IV, which is a New Jersey statutory cause of action.

---

[34]   550 U.S. 544 (2007).
[35]   556 U.S. 662 (2009).
[36]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[37]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

It is well-settled that this Court, sitting in Pennsylvania, applies Pennsylvania's choice-of-law principles to determine the applicable law.[38] The first step of that analysis is to determine whether there is any conflict between New Jersey and Pennsylvania law.[39] "If a true conflict exists, the Court must then determine which state has the 'greater interest in the application of its law.'"[40] That second-step analysis is both quantitative and qualitative, looking to the number of contacts and their weight "on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue."[41] The Court engages in this analysis with respect to each claim where necessary.

### B. Common Law Fraud Claims (Counts I through III), NJCFA Claim (Count IV) and Negligent Misrepresentation Claim (Count V)

Weis alleges several common-law fraud claims premised on Defendants' alleged misrepresentation about the registration status of the spray, including a claim that Defendants fraudulently induced it into entering the Agreement.[42] It also alleges a statutory fraud action under the NJCFA.[43] As all of these Counts find their basis in fraud, the Court addresses them together. Defendants argue that Weis fails to state a claim for fraud because it did not plead its fraud claims with sufficient particularity

---

[38] *See Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir. 2007).

[39] *Hammersmith*, 480 F.3d at 231.

[40] *Id.* (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (1970).

[41] *Id.* (quoting *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir. 1987)).

[42] FAC, Doc. 18 ¶¶ 54-76.

[43] *Id.* ¶¶ 77-84.

as required by Rule 9(b) and that its allegedly fraudulent misrepresentation was merely a "promise collateral to a contract."[44]

### 1.    Applicable Standards

The elements of common-law fraud are the same in both New Jersey and Pennsylvania, requiring a plaintiff to allege that the defendant (1) made a representation; (2) that the representation is material; (3) that the representation is false and made by the defendant with knowledge of its falsity or recklessness as to its veracity; (4) the defendant made the representation intending that the plaintiff rely on it; (5) the plaintiff did justifiably rely on it to his or her detriment; and (6) the resulting injury was proximately caused by the plaintiff's reliance.[45] The applicable standard of proof is clear and convincing evidence.[46]

Similarly, to state an NJCFA claim, a plaintiff must allege "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss."[47] "Unlawful practices fall into three general

---

[44]   SF Br., Doc. 22 at 14 (citing *Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 612 (N.J. Super. Ct. App. Div. 1960); *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 369 (E.D. Pa. 1996)).

[45]   *Compare McConkey v. AON Corp.*, 804 A.2d 572, 584 (N.J. Super. Ct. App. Div. 2002) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J.1997)), *with Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021).

[46]   *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 322 (Pa. Super. 2015); *McConkey*, 804 A.2d at 584-85 (citing *Fox v. Mercedes-Benz Credit Corp.*, 658 A.2d 732 (N.J. Super. Ct. App. Div. 1995)).

[47]   *N.J,. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 465 (N.J. 1994)).

categories: affirmative acts, knowing omissions, and regulation violations."[48] "[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud."[49] Therefore, when a plaintiff alleges an omission-based action under the NJCFA, the elements are substantially similar to those of common-law fraud.[50]

Rule 9(b) requires plaintiffs alleging fraud in federal court to "state with particularity the circumstances constituting fraud or mistake." It applies regardless of whether the action sounds in federal or state law. The Third Circuit interprets Rule 9(b) to require plaintiffs to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged' and 'plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'"[51] But the Court of Appeals also instructs that "courts must be sensitive to the fact that [Rule 9's] application, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud."[52]

---

[48] *Cox*, 647 A.2d at 462.

[49] *Id.* (citing *Chattin v. Cape May Greene, Inc.*, 591 A.2d 943, 944 (N.J. 1991) (Stein, J. concurring)).

[50] *See* MARK A. SULLIVAN, NEW JERSEY CONSUMER FRAUD 13 (2022) (comparing the CFA to common-law fraud).

[51] *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

[52] *Christidis v. First Pa. Mortg. Tr.*, 717 F.2d 96, 99-100 (3d Cir. 1983).

## 2.     Weis and Defendants' Contract

Before the Court applies the above standards, it must first define the legal relationship between the parties. As for the governing law, once again, there is no conflict. Both New Jersey and Pennsylvania have adopted the relevant portions of the Uniform Commercial Code, which applies to the sale of goods.[53]

Although it is not clear that the record contains all relevant communications between the parties, Connor Lees' September 1, 2020, email is best considered an invitation to Weis to make an offer for the spray.[54] Weis then made an offer through its purchase orders. Unless the circumstances clearly indicate otherwise—which they do not—an offer "shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances," and "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods."[55]

At this point the only terms were the price, set by SF in its invitation, and the quantity, set by Weis' purchase orders. But Weis included the additional condition of governmental compliance in its offer. Defendants accepted Weis' offer by performance, shipping the spray to Weis. Crucially, there is nothing in the record to

---

[53] *Compare* N.J. Stat. Ann. § 12A:2-206, *with* 13 Pa. C.S.A. § 2206.

[54] *See* Restatement (Second) of Contracts § 26 (1981); § 4:10. *Preliminary negotiations distinguished from offers*, 1 WILLISTON ON CONTRACTS § 4:10 (4th ed.).

[55] N.J. Stat. Ann. § 12A:2-206.

suggest that SF changed the terms of the offer when it accepted it by performing.[56]
So it accepted the governmental compliance condition.

### 3.    Application

As noted above, Defendants argue that obtaining EPA registration was merely
a promise collateral to contract, and Weis' allegations do not satisfy Rule 9(b). At
this stage, Weis' FAC satisfactorily shows that Defendants' representation about
their efforts to register the spray was material, Weis relied on that misrepresentation,
and their reliance caused them to suffer an injury. They now own product they cannot
sell by law.[57] Weis is a retailer; it has no use for products it cannot sell, and
Defendants knew this.[58] Therefore, the only elements in dispute are whether
Defendants made a knowingly false misrepresentation and their intent in doing so.

Defendants are correct in arguing that fraud cannot lie where an alleged
intentional misrepresentation is "predicated upon matters *in futuro*—it instead "must
relate to some past or presently existing fact."[59] But a party may fraudulently
misrepresent its "existing intention, i.e., a false state of mind," which is an exception
to the principle just stated.[60]

---

[56]   *See* N.J. Stat. Ann. § 12A:2-207 (providing the different ways an accepting party may change
the terms of the offer).

[57]   FAC, Doc. 18 ¶¶ 45-48 Defendants suggest that Weis could register the spray itself and
therefore there is no injury. Whether Weis could have registered and resold the spray may
affect the quantum of damages, but it does not serve as a basis for dismissal.

[58]   *Id.* ¶¶ 19-20.

[59]   *Ocean Cape*, 164 A.2d at 612 (citing *Anderson v. Modica*, 73 A.2d 49, 52 (N.J. 1950)).

[60]   *Id.* at 613 (citing *Samatula v. Piechota*, 60 A.2d 86, 87 (N.J. Ct. of Ch. 1948)).

To show a knowingly false misrepresentation, Weis first relies on Connor Lees' statement that "[o]nce [SF] [has] EPA registration [it] will have 100,000 units available on a weekly basis."[61] He also explained that SF was currently in the process of obtaining EPA registration, and his prior email expressed that EPA approval was pending.[62] Obviously, Connor Lees could not speak for the EPA, which suggests his statements are more predictions than promises or representations. Weis was certainly sophisticated enough to know that Lees could not guarantee EPA approval and does not argue otherwise.

But there's more. As stated above, when Defendants fulfilled the purchase orders, they did so on the condition that the spray complied with all applicable legal standards. As Weis later found out, they did not comply with FIFRA or the PPCA. Weis now alleges that at a minimum, Defendants knew that the spray was unregistered and in violation of their contract with Weis when they shipped it.

Weis also alleges that Defendants never intended to register it, and therefore fraudulently induced them into ordering the spray. Defendants do not provide any evidence that they tried to register the spray, and Weis provides some circumstantial

---

[61] Sept. 1 Email from Connor Lees, Doc. 18-1 at 21. Defendants' reliance on *Ocean Cape Hotel Corp. v. Masefield Corp.* is also misplaced because it ignores the procedural posture of that case. The defendants there moved for summary judgment, and the court ruled in their favor because the factual record—which contained affidavits from several witnesses—did not support the plaintiff's broad allegations of fraud and in fact tended to disprove fraud. *See Ocean Cape*, 164 A.2d at 613. By contrast, this case is at the motion-to-dismiss stage, and the factual record contains only the FAC, which the Court takes as true, and any attached exhibits.

[62] *See* Sept. 1 Email from Connor Lees, Doc. 18-1 at 21; Label Example, Doc. 18-1 at 5.

evidence that they never intended to—namely, the sequence of events: Connor Lees represented to Weis that SF was in the process of obtaining EPA approval and then later dissolved the SF Group after settling with Weis, at which point the spray was still unapproved. At this stage, that sequence sufficiently alleges that Defendants misrepresented their intention to register the spray as of September 1, 2020 and knew that they were never going to register the spray.

Defendants also attempt to characterize Weis' fraud claim as a restyled breach-of-contract claim. It is true that "the mere non-performance of an agreement is not evidence of fraud." [63] But Defendants did not just send Weis nonconforming goods, i.e., unregistered spray. Defendants misled Weis to believe that they would try to register the spray and then warranted that it was in fact registered. Defendants' failure to send conforming goods would certainly be a breach of contract or the implied warranty of merchantability, but the added misrepresentation is what makes this fraud, rather than just a breach of contract and a breach of warranty.[64]

The Court's analysis above also disposes of Defendants' Rule 9(b) argument. At this early, pre-discovery stage, Weis has met Rule 9(b)'s particularity requirement. It has identified Connor Lees' September 1, 2020 email as well as the purchase orders and corresponding shipments as the circumstances giving rise to

---

[63]  *Sun Co.*, 939 F. Supp. at 370.

[64]  Indeed, Weis brings breach-of-contract, breach-of-warranty, and unjust enrichment claims. FAC, Doc. 18 ¶¶ 94-130 (Counts VI through IX). Defendants do not address these claims in their moving papers. Accordingly, the Court will not dismiss them or further address them here. Defendants are free to raise arguments to those claims in a later motion.

fraud. In doing so, it has sufficiently alleged the time, place, and manner of Defendants' alleged deception.

For the same reasons, Weis has satisfactory alleged a CFA claim[65] and a negligent misrepresentation claim[66]. With respect to the Settlement Agreement, Weis relies on the same misrepresentation, that it did not know the spray was unregistered when it settled its dispute with Defendants. Defendants rely on the same arguments rejected above. Therefore, Defendants' Motions to Dismiss are denied with respect to Counts I through V.

### C.   Claims Against Tatanka and the Lees

Defendants assert that there is no privity of contract between Weis and Tatanka because Tatanka was not a party to the purchase orders.[67] They accordingly seek to have all claims against Tatanka dismissed.[68] They also argue that Weis fails to sufficiently plead facts to justify piercing SF's corporate veil to reach the Lees, SF's members.[69]

Weis responds that Tatanka and SF are a common enterprise such that the Court should pierce the corporate veil to reach Tatanka. Weis also argues that N.J.

---

[65]   *See Cox*, 647 A.2d at 462.

[66]   Under both New Jersey and Pennsylvania law, the tort of negligent misrepresentation has similar elements to a claim for fraud but only requires that the defendant make a false representation under circumstances in which he or she should have known its falsity. *See Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005); *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (N.J. 2000).

[67]   SF Br. Doc. 22 at 15.

[68]   *Id.*

[69]   Lees' Br. Doc. 28 at 6-7.

Stat. Ann. § 42:2C-51(d)(2) allows it to bring claims against Tatanka and the Lees as transferees of the assets that previously belonged to the now-dissolved SF Group.[70] It also seeks to hold the Lees accountable on a participation theory of liability.[71]

As for the law applicable to these claims, N.J. Stat. Ann. § 42:2C-6 provides that New Jersey law governs a member's liability for the "debts, obligations, or other liabilities of a limited liability company." SF was incorporated and dissolved under the laws of New Jersey, so those laws continue to apply to it.[72] Whether the statute also calls for application of New Jersey law to corporate veil-piercing is less clear. But the doctrine of corporate-veil-piercing is substantially the same under both New Jersey and Pennsylvania law.[73] Therefore, there is no conflict between the two.

### 1. Statutory Dissolution Liability

Section 42:2C-51(d) allows a claimant to bring a claim "against a member or transferee" of a limited liability corporation "if assets of the company have been distributed after dissolution." Section 42:2C-52 provides that such an action must be brought "within five years after the limited liability company was dissolved." Under

---

[70]   Weis Opp. Br., Doc. 24 at 5-7.

[71]   *Id.* at 7-8.

[72]   Both New Jersey and Pennsylvania have adopted the Revised Uniform Limited Liability Company Act. Pennsylvania's 15 Pa. C.S.A. § 8875 is identical to N.J. Stat. Ann. § 42:2C-51.

[73]   *Compare Stochastic Decisions, Inc. v. DiDomenico*, 565 A.2d 1133, 1136 (N.J. Super. App. Div. 1989), *with Mortimer v. McCool*, 255 A.3d 261, 283-88 (Pa. 2021). In fact, the Supreme Court of Pennsylvania in *Mortimer* eschewed any concise list of factors to guide the veil-piercing inquiry, instead adopting a flexible fact-sensitive approach. *See* 255 A.3d at 288-89.

the statute, a "transferee" is any person who receives "the right, as originally associated with a person's capacity as a member, to receive distributions from a limited liability company in accordance with the operating agreement, whether or not the person remains a member or continues to own any part of the right."[74]

Weis alleges that SF's assets went to its creditors and members after its dissolution.[75] It further alleges that Tatanka was a creditor of SF because it imported and distributed the spray and that the Lees were members of SF who received the surplus of SF's assets upon dissolution.[76] Accordingly, it is clear that Section 42:2C-51(d) authorizes Weis' claim against the Lees as former members of SF. But it does not follow that Section 42:2C-51(d) authorizes a claim against Tatanka. Weis alleges that Tatanka was a creditor of SF, not that it had a right to receive distributions from SF per SF's operating agreement.

### 2.   Common-Law Corporate Veil Piercing

To pierce the corporate veil, a plaintiff must show that  (1) "one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law."[77]  Such claims are governed by Rule 9(b) when they are premised on fraud.

---

[74]   N.J. Stat. Ann. § 42:2C-2.
[75]   FAC, Doc. 18 ¶ 38.
[76]   *Id.* ¶¶ 9, 10, 39.
[77]   *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171–72 (3d Cir. 2002) (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988)).

To show the control required to reach the second step of the piercing analysis, the Third Circuit provides the following non-exhaustive factors:

> gross undercapitalization . . . 'failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.'[78]

To support their allegation that Tatanka and SF are sufficiently comingled to pierce the corporate veil, Weis relies on the following facts: (1) the label on the spray at issue reads "The SF Group, LLC/Tatanka Brands"[79]; the Lees are principals to both entities[80]; both entities share the same address[81]; Connor Lees' email signature lists both Tatanka's and the SF Group's websites[82]; and the fact that Connor Lees dissolved SF two months after the parties settled their dispute and Weis was still unaware of the spray's registration status[83]. Based on this information, Weis alleges that "SF Group and Tatanka Trading have common ownership, unified administrative control, and supplementary business functions, thus operating as a

---

[78] *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988) (quoting *American Bell, Inc. v. Federation of Telephone Workers*, 736 F.2d 879, 886 (3d Cir. 1984)).

[79] Label Example, Doc. 18-1 at 5.

[80] FAC, Doc. 18 ¶¶ 9-10.

[81] *Id.* Through a search of publicly available records from Burlington County, New Jersey, the Court finds that Richard Lees is the owner of record of 2 Magnolia Court, Medford, New Jersey. *See* Burlington County Property Assessment Search Hub, https://www.taxdatahub.com/623af8995103551060110abc/Burlington (search by property for 2 Magnolia Court).

[82] Email from Connor Lees, Doc. 18-1 at 2.

[83] FAC, Doc. 18 ¶ 36.

single enterprise."[84] Defendants present no evidence that SF does business with suppliers other than Tatanka or that there are directors, officers, or other key individuals beyond the Lees. The Court finds these facts sufficient to pierce the corporate veil at this early, pre-discovery stage of litigation.[85] But Defendants may renew their arguments if further discovery shows that the extraordinary remedy of veil-piercing is unwarranted.

The Court concludes below that Weis has plausibly pled common-law fraud that at the very minimum involves Tatanka. That allegation satisfies the second requirement for piercing the corporate veil to reach the Lees and Tatanka. Furthermore, the Court agrees in part with Weis on its participation liability argument. That doctrine, which is the same under both New Jersey and Pennsylvania law, holds that a corporate officer "who commits a tort . . . or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort."[86] Connor Lees was the instrumentality through which SF negotiated and contracted with Weis. Therefore, if SF's actions turn out to be tortious, Connor Lees is liable. However, at this juncture, Richard Lees' only participation is signing the settlement agreement. That

---

[84]   *Id.* ¶ 50.

[85]   *Teamsters Local 863*, 296 F.3d at 172.

[86]   *Charles Bloom & Co. v. Echo Jewelers*, 652 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1995); *see also Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983) ("Liability under [the participation] theory attaches only where the corporate officer is an actor who participates in the wrongful acts. Therefore, corporate officers may be held liable for misfeasance.").

act alone is insufficient to impose participation liability. Even so, the Court already concluded that Richard Lees is liable under N.J. Stat. Ann. § 42:2C-51(d) as a former member of SF. But Weis is free to argue again for participation liability on his part if discovery uncovers his further involvement.

Therefore, Defendants' Motion to Dismiss is denied and all claims may proceed against Tatanka and the Lees.

### D.    Punitive Damages

As this Court has long and consistently held, "it is premature to dismiss demands for punitive damages prior to discovery."[87] "[O]rdinary negligence will not support an award of punitive damages" as they "are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured."[88] To establish a punitive damages claim, "the state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious."[89] To defeat a Rule 12(b)(6) motion, a plaintiff must plausibly plead facts demonstrating intentional, wanton, reckless, or malicious conduct.[90]

---

[87]    *Kerlin v. Howard*, 2018 WL 4051702, at *2 (M.D. Pa. Aug. 24, 2018) (Brann, J.) (citing *Cobb v. Nye*, 2014 WL 7067578 (M.D. Pa. December 12, 2014) (Brann, J.); *Cerreta v. Red Roof Inns, Inc.*, 2016 WL 4611689, at *3 (M.D. Pa. Sept. 6, 2016) (Brann, J.); *Tucker v. Horn*, 2016 WL 4679018, at *1 (M.D. Pa. Sept. 7, 2016) (Brann, J.).

[88]    *Young v. Westfall*, 2007 WL 675182, at *2 (M.D. Pa. Mar. 1, 2007) (McClure, J.) (citing *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005)).

[89]    *Hutchison*, 870 A.2d at 770 (quoting *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)).

[90]    *See Twombly*, 550 U.S. at 556.

Even a showing of gross negligence will not suffice—but a plausibly pled allegation of fraud will.[91] Therefore, Defendants' Motion to Dismiss is denied insofar as it seeks to strike Weis' claims for punitive damages.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[91]   *See Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005).